9833

HUTCHISON v. SOUTHERN RY. CO.

(95 S. E. 181.)

1. APPEAL AND ERROR—REVIEW—DIRECTED VERDICT.—The evidence must be considered most favorably for plaintiff in determining whether a directed verdict for defendant was properly granted.

2. CARRIERS—PASSENGERS—CONDUCTOR'S DUTY.—A railroad conductor was not negligent in failing to volunteer information that the train did not stop at the station to which plaintiffs had tickets, since he might assume that they intended to alight at a near-by station and complete the journey by a local train or otherwise.

3. CARRIERS—PASSENGERS—CONDUCT OF CONDUCTOR.—Plaintiff's testimony that defendant railroad's conductor was rough and gruff in advising her that the train would not stop at a station, etc., establishes no cause of action, since plaintiff's opinion of the language used does not make it actionable.

4. CARRIERS—ACTION—BURDEN OF PROOF.—Plaintiff passenger has the burden of proving that the language and conduct of defendant railroad's conductor were actionable.

5. CARRIERS—PASSENGERS—SUFFICIENCY OF EVIDENCE.—Misinformation given by defendant railroad's agent that plaintiffs' train would stop at their destination, resulting in the failure of a relative to meet them at a near-by station where they alighted pursuant to their original plan, and from which they advised the relative they would proceed to their ultimate destination without his company, establishes no cause of action.

Before MAULDIN, J., York, Fall term, 1916.    Affirmed.

Action by Mrs. Kate J. Hutchison and Miss Kate J. Hutchison against the Southern Railway Company. Judgment for defendant, and plaintiffs appeal.

*Mr. J. Harry Foster,* for appellant, cites: *As to regulations of the Interstate Commerce Commission:* 95 S. C. —. *As to duty of carrier to give passenger information:* 90 S. C. 510; 88 S. C. 421; 53 S. C. 210; 75 S. C. 142; 105 S. C. 423; 2 L. R. A. (N. S.) 110; 78 Mo. 610; 156 Ala. 222; 47 So. Rep. 180; 77 Mo. 198; 95 S. C. 71; 21 S. C. 35; 38 S. C. 429; 80 S. C. 135. *Carrier cannot limit common law liability for its own negligence:* 75 S. C. 528; Thompson on Negglience, sec. 3326; 55 S. C. 160; 26 S. C. 258. *As to concurrent negligence of initial and that of connecting carrier:* 79 S. C. 502; 91 S. C. 150; 39 Am. St. Rep. 834; 12 Am. St. Rep. 654; 16 Am. St. Rep. 257; 23 Am. St. Rep. 192; Thompson on Negligence, sections 3073-3380; 27 L. Ed. 266. *As to direction of verdict for defendant:* 26 S. C. 49; 52 S. C. 323; 81 S. C. 567; 82 S. C. 252; 83 S. C. 213; 85 S. C. 523; 87 S. C. 174; 87 S. C. 240; 85 S. C. 303; 87 S. C. 321; 87 S. C. 235; 93 S. C. 71; 89 S. C. 484; 85 S. C. 481; 91 S. E. Rep. 295; 85 S. C. 479; Jones on Evidence, section 731; 66 N. W. Rep. 652 (Neb.); 96 S. C. 326; 84 S. C. 299; 77 S. C. 344; 12 N. E. Rep. 583; 106 N. Y. 206; 7 Rich. 201.; 62 Am. Dec. 411; 130 Mass. 308; 1 N. E. Rep. 348; 67 L. R. A. 555; 838 W. 333. *Additional authorities as to carrier not allowed to limit its liability for common law negligence:* 100 S. C. 413; 17 Wall. 357; 176 U. S. 518; 78 Am. St. Rep. 933; 104 Tenn. 568; 50 L. R. A. 729; 50 S. W. Rep. 303; 1 L. R. A. 702; 148 Mass. 220; 183 S. W. Rep. 775; 171 S. W. Rep. 41 Mo.; 19 L. R. A. (N. S.) 1015-1017.

*Messrs. McDonald & McDonald,* for respondent, submit: *The rights of the plaintiffs and the liability of the defendant must be determined exclusively by the provisions of the Interstate Commerce act:* 101 S. C. 16. *As to the provi-*

*sions of the Interstate Commerce act:* 223 U. S. 603; 56 L. Ed. 570; 225 U. S. 165; 56 L. Ed. 1038; 223 U. S. 573; 56 L. Ed. 567; 235 U. S. 371; 59 L. Ed. 275; 204 U. S. 449; 51 L. Ed. 552; 227 U. S. 645; 57 L. Ed. 683; 232 U. S. 508; 58 L. Ed. 703; 233 U. S. 97; 58 L. Ed. 868; 239 U. S. 446; 60 L. Ed. 276; 240 U. S. 614; 241 U. S. 326; 242 U. S. 151; 227 U. S. 656; 57 L. Ed. 691; 232 U. S. 492; 58 L. Ed. 697; 232 U. S. 97; 58 L. Ed. 868; 240 U. S. 632; 60 L. Ed. 836; 95 S. C. 427; 99 S. C. 78; 101 S. C. 11; 225 U. S. 165; — L. Ed. 1038; 232 U. S. 508; 58 L. Ed. 703; 233 U. S. 97; 58 L. Ed. 868; 233 U. S. 173; 58 L. Ed 901; 226 U. S. 441; 57 L. Ed. 290; 95 S. C. 430-1; 99 S. C. 78; 101 S. C. 11; 89 S. C. 100; reversed by U. S. Supreme Court, 30th October, 1916.    *The Southern Railway Company was not a common carrier beyond its own line:* 2 White on Personal Injuries on Railroads, sec. 809, p. 1216; 2 Fetter on Carriers of Passengers, sec. 372, p. 926; sec. 396, p. 977; 1 Hutchison on Carriers, section 262, p. 281; 2 Hutchison on Carriers, secs. 1048-49, p. 1209; 135 U. S. 333; 39 L. Ed. 176; 83 U. S. —; 16 Wall. 324 (21, 301); 89 U. S. (22 Wall. 129); 107 U. S. 102; 2 L. R. A. (N. S.) 508; 62 N. J. L. 282; 43 L. R. A. 84; 72 Am. St. Rep. 647; 41 Atl. 916; 46 N. J. L. 614; 50 Am. Rep. 445; 71 N. J. L. 21; 58 Atl. 164; 75 Miss. 371; 23 So. 187; 155 U. S. 333; 39 L. Ed. 176; 15 Sup. Ct. Rep. 136; 19 S. C. 353; 36 S. C. 110; 43 S. C. 469.    *As to direction of verdict in favor of the defendant:* 75 S. C. 360; 82 S. C. 483-84; 85 S. E. R. 847; 8 L. R. A. (N. S.) 880; 75 S. C. 360; 82 S. C. 482; 101 S. C. 17-18.

December 7, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

These actions were brought to recover damages alleged to have been caused by incorrect information given to plaintiffs by defendant's agent at Rock Hill, S. C., with regard to

their right to through transportation, without change of cars, from Rock Hill to Auburn, Ala.

Plaintiffs allege that on October 21, 1915, they purchased from defendant's agent at Rock Hill through tickets from Rock Hill to Auburn, Ala.; that the agent told them to go to Charlotte and take train No. 37, which is known as the New York, Atlanta & New Orleans, Limited, and they would be carried through to Auburn, without another change of cars; that they followed his directions, and, when the train was approaching Atlanta, the conductor asked them to go forward and take seats in another car, as the one they were in would be dropped at Atlanta, thereby further misleading them into the belief that they would be carried on to Auburn in the forward car, as he knew their tickets were for Auburn; that, after the train left Atlanta, another conductor came through to take up tickets, and, when he saw their tickets, told them the train was not scheduled to stop at Auburn, and that he would not stop there; that he was obdurate, rude in manner and speech, and would give them no opportunity to explain their situation to him, and they were compelled by the circumstances to get off at Opelika, Ala., a station seven miles this side of Auburn, at which the train was scheduled to stop, and drive through the country in an automobile to Auburn; that the train arrived at Opelika about 10 o'clock at night; it was raining and the weather was very inclement, and their experience was most unpleasant and disagreeable, on account of the inclemency of the weather and the drive through the country at night without an escort.

Defendant denied misdirection of plaintiffs by its agents, and alleged that they had been informed that No. 37 was not scheduled to stop at Auburn, and, in view of that information, they intended to get off at Opelika, and had made arrangements for a relative to to meet them there and take them to Auburn. Defendant also claimed immunity from liability under the terms of the contract of carriage, alleg-

ing that the tariff under which the tickets were sold was a through route and joint rate tariff that had been established over the lines of defendant and other carriers, and that by the terms of the contract, which was printed on the tickets, plaintiffs agreed that, in selling the tickets over other lines, defendant acted only as agent for such lines, and agreed that its own responsibility should end with its own line, and that its line ended at Atlanta; and, further, that the tariff under which the tickets were sold had been duly filed with the Interstate Commerce Commission and published, and that it showed that the train was not scheduled to stop at Auburn.

The cases were heard together on Circuit and in this Court. After hearing all the evidence, the Circuit Court directed verdicts for defendant, and from judgments thereon, plaintiffs appealed.

Considered in its most favorable light for plaintiffs, as it must be on an issue as to the right of the Court to direct verdicts for defendant, there was evidence tending to prove that defendant's Rock Hill agent told plaintiffs that they could go through to Auburn on 37 without changing cars after leaving Charlotte, although that was denied by the agent.

But the inference which plaintiffs would have drawn from the fact that defendant's conductor asked them to take seats in another car, because the car they were in would be taken off the train at Atlanta, is not warranted by the fact alone. While it may, in a way have been misleading to plaintiffs, since they construed it as confirming what the agent at Rock Hill had told them, nevertheless the conductor was not responsible for that result, because, while he knew that their tickets were for Auburn, he was ignorant of the information that had been given them by defendant's agent at Rock Hill; and he may have assumed, as he had the right to do, that they had made proper inquiry and had been given correct information as to the stopping of the train at Auburn; and, in the absence of special inquiry of him, he

had the right to assume that they knew how to get to their destination. No doubt, he assumed that they knew they would have to get off at some station south of Atlanta at which the train was scheduled to stop, and take a local train for Auburn, of which there were a sufficient number for the accommodation of local traffic, or go there by private conveyance. Therefore, under the circumstances, he was guilty of no dereliction of duty in failing to volunteer information which he had the right to assume that plaintiff had.

In passing, we may also put out of the case the charge of rudeness of conduct and speech on the part of the conductor who took charge of the train at Atlanta. The testimony, considered in its most favorable light for plaintiffs, fails to prove any actionable conduct or speech. Mrs. Hutchison testified to nothing more than that the conductor was "rough" and "gruff" in conduct and speech to her, and that he would not give her an opportunity to talk to him, but said positively that he would not stop at Auburn.

It is not the plaintiff's opinion or characterization of the language or conduct of another that makes it actionable; whether it is so or not is determined by the law; by the Court interpreting the law where there is but one inference; or by the jury when the question is of doubtful import. An overly sensitive person may, and often does, become offended by speech or conduct which was not intended to be offensive, and which should not and would not offend a person of normal sensibilities. "Rough" or "gruff" language or conduct on the part of a conductor toward a passenger may be actionable, or it may not be. The burden was upon plaintiffs to prove that it was, which they failed to do. If it had been abusive, obscene, insulting or humiliating, that could and should have been proved. Plaintiff's characterization of it as "rude," "rough," or "gruff" is not sufficient. *Lipman v. Railway.* That does not make it so, or warrant the inference that it is so. *Lipman v. Railway.* (93 S. E. 713), 108 S. C. 151. In justice to the conductor,

it should be said that he denied the charge made against him, and testified that his treatment of plaintiffs was civil and polite.  In this view of the testimony, it becomes unnecessary to decide whether, if the language or conduct of the conductor had been actionable, defendant would have been liable to plaintiffs therefor, under the terms of the contract limiting its liability to its own line.

Mrs. Hutchison testified (Miss Hutchison, being indisposed at the time of the trial, did not testify) that they had been contemplating this trip for several weeks before they left home, and that her son, whom they were going to visit, had written them several letters about the best way to make the trip.   He testified that he wrote them that 37 was the best train for them to take, but that it did not stop at Auburn, but he advised them to buy their tickets through to Auburn, so that they could have their baggage checked to Auburn, which they did, and get off at Opelika, where he would meet them and take them to Auburn in an automobile.   From this Mrs. Hutchison conceived the idea that the train did not go through Auburn, but turned off in some other direction this side of Auburn. She testified that she did not know that the train went through Auburn until she had the conversation hereinafter mentioned over the telephone with her son's wife, after she had gotten off the train at Opelika; and she testified repeatedly that she expected her son to meet her at Opelika and was greatly disappointed and upset when she got off at Opelika and found that he was not there.

The mischief was brought about in this way.   After plaintiffs had left Rock Hill, Mrs. Hutchison's husband telegraphed to his son at Auburn that they had left on the morning train for Auburn.   On receipt of that message, the son engaged an automobile to go to Opelika to meet them. Some three hours after the telegram was sent, Mr. Hutchison received a letter from his son advising, as before, as to the best way to make the trip.   But, having interpreted the

information given by the agent at Rock Hill to mean that the train would stop at Auburn, he sent his son a second message, telling him that they had gotten tickets through to Auburn. On receipt of this message, the son canceled the order for the automobile, and went to the station at Auburn to meet them, and was there when the train passed through.

Mrs. Hutchison testified that when she got off at Opelika and found that her son was not there she called him over the telephone to inquire why he had failed to meet them. His wife answered and gave the explanation above stated, and then she learned for the first time that the train passed through Auburn.

The testimony for plaintiffs is susceptible of no other inference than that when they left home they intended to get off at Opelika, and got off according to their original intention. It necessarily follows that the alleged misdirection of the Rock Hill agent did not cause them to get off, or the damages alleged to have been caused by the drive through the country. Moreover, they did just what they would have had to do if the Rock Hill agent had given them correct information. Therefore it is not perceived how the alleged misdirection caused any damage, except possibly the failure of the son to meet them at Opelika, and the subsequent ride to Auburn without him as an escort, but no damage resulted from that, except the deprivation of the pleasure of his company on the way, and if that were an element of recoverable damage the plaintiffs could not recover for it because Mrs. Hutchison admitted that when her son found out that she was in Opelika he offered to go there and take her to Auburn, but she declined the offer, saying that she would rather go without him than have him make the trip.

This view of the case makes it unnecessary to consider whether, if they had been misled by the alleged incorrect information to their damage, defendant would have been exempt from liability on the ground that, under the act

7—109.

regulating interstate commerce, plaintiffs are conclusively presumed to have known from the schedule filed with the commission that the train did not stop at Auburn.

Judgment affirmed.

MESSRS. WATTS and GAGE, concur.

MR. JUSTICE FRASER, *dissenting.*    It seems to me that the whole trouble arose from the telegram of Mr. Hutchison, Senior.

The ticket agent was asked two questions:

1st. Can you sell tickets to Auburn? The answer was, "I can." The tickets were sold as stated.

2d. If the passengers catch No. 37 in Charlotte, will they have to change in Atlanta? The answer was, "No." The passengers caught No. 37 in Charlotte and only changed from one car to another on the same train. Of this change there was no complaint and no injury. At the time of the purchase of the tickets Mr. Hutchison did not know that No. 37 passed through Auburn. The ladies did not know it until they had disembarked at Opelika. The ladies expected to meet Mr. T. J. Hutchison at Opelika. The injury arose from the failure to meet him at Opelika.

Now, why did they fail to meet at Opelika? The telegram prevented the meeting.

The parties have an agreement to meet at Opelika. One party is notified of a change and the other is not notified of the change. Only one thing could have been expected, *i. e.,* they did not meet. The telegram did it. The agents of the defendant had nothing to do with the telegram and the defendant is not responsible.

MR. CHIEF JUSTICE GARY concurs.