RHODES v. HOUSTON, E. & W. T. R. CO. et al. (No. 8217.)

(Court of Civil Appeals of Texas. Galveston. June 1, 1922.)

1. Carriers ⬉295(3)—Carrier held not negligent in failing to warn passenger of danger of going on platform.

Where a passenger, in violation of the rules of defendant company, was smoking in a coach, and, upon being asked to stop, asked where he could go, and was told by the porter that if he wanted to smoke, he could go out on the platform, and, on doing so, slipped and fell off train and was injured, *held*, that the porter was not negligent in failing to warn passenger of the dangers of going on the platform.

2. Carriers ⬉290(1)—Slippery substance on platform of car held not negligence, unless placed by employé or unreasonable delay in removing it.

The presence of a slippery substance on the platform of a car, used by passenger in getting on and off the train, does not constitute negligence on the part of the company, unless it was placed there by its employés or has been there long enough to justify the inference that a failure to discover it was due to a want of proper care.

3. Carriers ⬉290(1)—Failure to have doors at sides of car platform or to keep such doors closed held not negligence.

The failure of a carrier to have doors on the sides of its car platform or to keep such doors closed *held* not negligence.

Appeal from District Court, Harris County; W. E Monteith, Judge.

Action by Dan Rhodes against the Houston, East & West Texas Railroad Company and another. From a judgment for defendants, plaintiff appeals. Affirmed.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Van Velzer & York, of Houston, for appellant.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellees.

PLEASANTS, C. J. Appellant brought this suit against the appellee railroad company and the Director General, Agent of the government of the United States in charge of the railroad, to recover damages for personal injuries alleged to have been caused him by the negligence of the defendants.

The following sufficient summary of the allegations of plaintiff's petition, stating his cause of action, is copied from appellants' brief:

"That, on June 20, 1919, while the defendant was a common carrier of passengers for hire, the plaintiff purchased a ticket of defendant and became its passenger for transportation from Humble to Houston, Tex.; he rode in the coach provided by defendant for negro passengers, started to smoke, and was told by the train porter to go upon the front platform to smoke; and he went there for that purpose. As he stepped out upon the platform his foot slipped, he lost his balance, and fell first against the iron rail that punctured his cheek, knocked a tooth out, bled into his eyes and stunned him, and then he stumbled and fell down the platform steps grabbing for a hold with his hands and arms, swung under the train, and the car wheels ran over his ankle, severing his left leg half way between the foot and knee. At the time the plaintiff went upon the platform, the train was running, and said car was lurching and vibrating. Plaintiff did not know of any unusual danger of riding upon the car platform, and the porter, in defendant's employ when he directed plaintiff to go thereon, did not warn plaintiff of the danger, and it was extrahazardous to ride upon the platform when the train was moving. There was a greasy or slick place upon the car platform, in plain view of the defendant train crew, caused by grease or fruit or the like being spilled or crushed thereon, and said slippery substance rendered the platform unusually dangerous; and it had remained in that condition for a long time prior to plaintiff's injury; how long plaintiff did not know; and plaintiff did not see nor know thereof until he stepped thereon and his foot slipped. There was no door at the foot of the platform steps, or, if a door was there, it was open at the time of plaintiff's injury, and, if there had been a closed door at the steps it would have prevented plaintiff's fall off the train. The defendant's negligence was averred to be in knowingly permitting plaintiff to go upon the platform of the moving train without warning him of the extra danger, in directing plaintiff to go upon the platform, in permitting the platform to be slippery with grease or crushed fruit, in failing to provide or have a closed door at the foot of the platform steps. * * *

"The petition also alleged the rules of duty for the preservation of the safety of passengers which defendant violated, and alleged that the accident was the proximate, immediate, natural and probable result of such violation. The petition further alleged that, by long usage and custom, traveling negroes on defendant's trains had habitually learned to obey the directions given them by train porters, with the knowledge and acquiescence of defendant."

The defendant answered by general demurrer, general denial, and plea of contributory negligence.

The cause was tried with a jury, and, after hearing the evidence, the court instructed the jury to return a verdict for the defendants, and, upon the return of such verdict, judgment was rendered in accordance therewith.

Appellant assails the judgment on the ground that the evidence raised the issues of negligence charged in the petition, and therefore the trial court erred in taking the case from the jury.

It is agreed that appellant was a passenger upon appellee's train from Humble to Houston on the date alleged in the petition, and the undisputed evidence shows that he fell from the train and received the injuries alleged. Plaintiff's testimony as to the attending circumstances and the cause of his fall and consequent injury is as follows:

"On this trip to Houston, there was the porter in the car I rode in, no other member of the train crew. I never had any talk with him, only I tried to smoke, you know, and he came through the coach and told me I couldn't smoke in there, and I says, 'Isn't this a smoker?' I says, 'Where is the smoker?' and he says, 'There is ladies in all the coaches this morning, and I says, 'Where can I smoke?' and he says, 'You will have to go out on the front and smoke.' I had just started to smoke, he told me to go out on the front, and I went out and I did not smoke any out there but went out there in order to smoke, it was the front of the car I was in, there were women in that car, in that part of it that I was in. I left that car because the porter told me I had to get out of there to smoke. When I went out in front I slipped off just as I got out there, and fell. I slipped on something, some kind of fruit or some kind of grease or something, I couldn't say positive what it was. It was grease or a banana peeling or something. I did not have time to see what I slipped on. When I fell I knocked that hole in my face and that stunned me and I commenced to fall; the lick on my face stunned me and when I am stunned I am disabled to do anything. I hit against a piece of iron in falling, and that made a hole in my face; it was that iron bar that my face struck out on the platform; above the platform about two feet above it, what I struck my face against is that piece that comes up on that running board on that side, there is a place on the outside that I fell on that my face struck on the right-hand side of the car, attached to the car but away from the car on the side of the steps, three feet away from the end of the car about. When I fell I had not had time to do any smoking. When I steps out I fell and knocked that hole in my face, and I commenced grabbing this way (indicating) trying to catch something but that hitting me in the face blinded me, and I could not see anything until I got to the infirmary. I do not remember doing anything after being hit in the

face, only I commenced grabbing for something. I got hold of something but I could not get a good hold on it. I got my arm on it this way (indicating). I never could steady myself. I do not know which way my body was moving at the time I got hold of something; I could not see at all and the blood was in my eyes. After I got this lick I did not know anything else, only I was grabbing, and I grabbed a hold of something and the next thing—all I know when I hit the ground I could feel some dust flying in my face and I knew that I was on the ground. I stopped smoking in the coach where I was sitting because the porter told me to stop, told me I could not smoke in there, and told me to go out on the platform and smoke. If he had not told me to I would not have gone out on the platform."

On cross-examination he testified:

"The porter said go to the front end if you want to smoke, and he went on back somewhere, but I felt I had to smoke and went to the front end on the car, the door was open, and, as I stepped out on something soft, but what I stepped on I do not know, but as I put my foot down my foot slipped on something but I hardly know how I fell, the first thing I know I stepped on something and felt it slip and my foot slipped, and I fell and went rolling down the steps, I do not know what I stepped on. That lick on my face blinded me, and I could not see because there was blood on my face. I got that lick before I hit the steps; when I was falling my feet went out from under me. I made a statement about the case to Mr. Newberry, the claim agent, that I stepped on a banana peeling or something 'like that or something that slipped, that something I stepped on and slipped, I do not know what it was."

He further testified that he knew it was dangerous to ride on the platform, but he went out there because the porter told him he would have to go there if he wanted to smoke, and did not think of the danger at that time.

Frank Gillum, a witness for plaintiff, testified:

"Dan was smoking on that trip and the porter told him he could not smoke in there, so he asked, 'Where can I smoke?' and he says, 'Go out on the platform, there are ladies in here.' And he said, 'There are ladies back yonder, and only two or three in here, you ought to make them go back in there, and have a smoker.' And he says, 'Go out on the platform.' Dan and the porter had that conversation, and Dan had lit a cigarette, and there were women in the coach, and the porter said that to Dan, the ladies did not say anything. The women were in that part of the coach; a coach had two compartments. The train was supposed to have a smoker, and the smoker was the same compartment where Dan was; there was not any other smoker that I saw; the porter did not speak of any other smoker. The porter told Dan to go out on the platform. I know he was the porter because he had a cap on with H. E. & W. T. on the cap, and he was unlocking doors and fooling around, and I know he was bound

to be the porter. No other member of the train crew took any part in attending to the doors and the passengers in that coach on that trip except that porter, and, after the conductor took up the tickets, the conductor did not come back there any more. I had ridden in that train before and on trains on the trip from Humble to Houston before, and on such trips the porter attended the doors and the different details about the colored smoker. * * * That the porter was supposed to ride in the coach I was riding in. He never did set down, I guess he had business in some other part of the train, he was in and out of the coach all the time. He seemed to have something to call his attention to other parts of the train and never did stop in that coach. He did not talk to any other passenger in the coach but Dan. I did not see any other trainman going in or out of the coach except Dan. When he seen Dan smoking he says, 'You cannot smoke in here.' Dan says, 'There is only a couple of women in here, and the back end is full of women, why don't you make the women go back there and allow us to smoke.' Then the porter left for the back end of the same coach, separated from that end with a partition. There was colored women in the same part of the coach where Dan and I were. The porter says, 'Well, there is ladies in here, you will have to cut out that smoking.' And he says, 'There is nowhere to smoke, there isn't but a couple of women in here, why don't you make them go back in there, and we will have a smoker. Where can I smoke?' And he says, 'Don't care where you smoke, go out on the platform if you want to.' And after he stepped out there he slipped."

Will Taylor, for plaintiff, testified:

"The train porter had his cap on, the train porter's cap. He said to Dan not to smoke in here, and Dan said, 'Isn't this a smoker?' He said, 'No.' Dan was smoking when the porter spoke to him and said, 'You can't smoke in here.' Dan said, 'Isn't this a smoker?' And he said, 'No; there are ladies in here.' Dan says, 'Where am I going to smoke?' And he said, 'You will have to go on the platform.' And Dan went out there. The porter did not indicate the platform he meant. When he said that he just said, 'You will have to go on the platform,' and then went out on the platform. Dan had a cigarette in his mouth as he left his seat. The porter went back toward the rear of the train. I was not paying any attention to the porter and did not know if he went out of that part of the car. I was sitting a few seats behind Dan on the same side of the coach. I did not see what Dan did when he went out on the platform. I heard somebody on the train say, 'That man has fell.' I did not see anything out on the platform at that time. After I got to the depot I saw something that looked like grease or something, I do not know what it was; saw it as I was getting off. The grease or something was on the platform of the coach, the same platform where Dan went out. I could not say just where it was on that platform; it was just a sort of spot that looked like it was slipping off, some that way and some that way (indicating). I could not see how much of the platform it covered, it seemed

to be about as wide as my hand and about that long (indicating), and there was streaks through it like somebody had slipped. I did not know what that was, and did not try to find out."

[1] There is no other evidence tending to establish appellant's allegations of negligence, and we agree with the trial court that the evidence adduced was not sufficient to raise the issue of negligence on the part of the appellees.

There is nothing in the evidence to sustain the contention that appellant was ordered by the porter to ride upon the platform of the car, or that the porter was negligent in directing or permitting the appellant to go upon the platform without warning him of the danger of riding in that place. The uncontradicted evidence shows that, in violation of the rules of the company, appellant was smoking in the car in which there were female passengers, and was told by the porter that he must not smoke in the car, and, when appellant asked where he could smoke, the porter replied if he wanted to smoke he would have to go out on the platform. Appellant testified that he knew of the danger of riding on the platform, but did not think of it at the time he went on it. He was a grown man, and the evidence shows he was accustomed to riding on railroad trains. We do not think reasonable minds can differ in the conclusion that the porter, under the circumstances shown by this evidence, was not negligent in failing to warn appellant of the danger of going on the platform.

[2] The evidence leaves uncertain what the substance was on the platform on which appellant stepped and slipped. Whether it was a piece of banana or some other fruit, or grease of some kind, is immaterial There is no evidence that it was put there by any employé of the railroad company, or that it had remained there such a length of time that it should have been discovered and removed by the exercise of proper care on the part of appellee's employés. Whatever the substance was, it was on the platform, used by passengers in getting on and off the train, and it is more probable that it was dropped there by a passenger than by an employé of the company. The presence of the substance on the platform would not constitute negligence on the part of the company, unless it was placed there by some of its employés or had been there long enough to justify the inference that a failure to discover it was due to a want of proper care. Railway Co. v. Jones, 103 Tex. 187, 125 S. W. 309; Railway Co. v. Black, 40 Tex. Civ. App. 415, 89 S. W. 1087.

[3] It goes without saying that, upon the facts of this case, negligence cannot be predicated upon the failure of the company to have doors on the sides of its car platform or to keep such doors closed.

These conclusions require an affirmance of the judgment of the trial court, and it has been so ordered.

Affirmed.