13251

## HALL v. SOUTHERN RAILWAY CO. *ET AL.*

(160 S. E., 584)

*Messrs. Frank G. Tompkins, George B. Cromer* and *Efird & Carroll,* for appellants,

*Messrs. Timmerman & Graham,* for respondent,

October 6, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, commenced in the Court of Common Pleas for the County of Lexington, May 2, 1929, by Melvin J. Hall, as plaintiff, against the defendants, Southern Railway Company and W. H. Atwell, is for the recovery of damages in the sum of $50,000.00 for personal injuries alleged to have been sustained by plaintiff August 13, 1928, in the City of Columbia, S. C., while a passenger on a passenger train of the defendant, Southern Railway Company, operated from the City of Augusta, Ga., to the said City of Columbia, and in charge of the defendant W. H. Atwell as conductor thereon. Issues being joined, the case was

tried at the November, 1929, term of said Court before his Honor, Judge E. C. Dennis, and a jury, resulting in a verdict for the plaintiff in the sum of $1,000.00 actual damages.

From the judgment entered on the verdict, the defendants have appealed to this Court. The sole question raised by the exceptions is that there was no evidence to be submitted to the jury on the acts of negligence charged against the defendants, and that, therefore the trial Judge should have granted defendants' motion for direction of a verdict. His Honor granted defendants' motion as to punitive damages, leaving only the question of actual damages for the jury. The allegations of the complaint, material to the question involved, are as follows:

"3. That the defendant, W. H. Atwell, was at the times hereinafter mentioned a servant and agent of the defendant, Southern Railway Company, to wit: the conductor in charge of the passenger train hereinafter mentioned and in control and management thereof, and at the times hereafter mentioned was acting within the line and scope of his duties as such for the defendant, Southern Railway Company.

"4. That on or about the 13th day of August, 1928, the plaintiff purchased a round trip ticket from the ticket agent of the defendant, Southern Railway Company, at its station in Batesburg, in the County of Lexington, and State of South Carolina, for passage from Batesburg aforesaid to the City of Columbia, in the State of South Carolina, and return, and paid therefor the usual and customary charges; that on the morning of the date aforesaid the plaintiff, using said ticket boarded the passenger train of the defendant Southern Railway Company, running from the City of Augusta, aforesaid, to the City of Columbia, aforesaid, at Batesburg, aforesaid, and thereby then and there became a passenger upon a passenger train of the Southern Railway Company, in charge of the defendant, Atwell, and as such was entitled to the highest degree of care from the said

defendants and other servants and agents of said Southern
Railway Company; and that it was the duty of the defend-
ants to provide a safe place for plaintiff to walk on in board-
ing and leaving said train and to provide for his comfort
and safety while a passenger thereon.

"5. That the plaintiff rode said train as a passenger to
the Union Station in the said City of Columbia and after
said train had come to a stop in said station he left his seat
to alight from said train and as he walked into the aisle of
the passenger coach in which he was riding he stepped on a
banana peel lying in said aisle which caused him to slip and
fall with great force and violence against the arm of one
of the seats and the floor of said passenger coach belonging
to said Southern Railway Company, and at that time in
charge of and under the control of its servants and agents,
and plaintiff was seriously, painfully and permanently in-
jured by said fall in and about his body and especially in
his groin and he was ruptured and otherwise hurt; that by
reason of said injury the plaintiff was caused to suffer
great and excruciating pain, he was annoyed, inconvenienced
and subjected to considerable trouble and expense in trying
to cure himself and lost much valuable time; and plaintiff
is informed and verily believes that his injuries are per-
manent and that he will continue to suffer annoyance, in-
convenience, pain and an impairment of his ability to make
a living for himself and family as a result thereof, and be
subjected to expense for medical treatment, as plaintiff is
dependent upon his skill as a manual laborer for a livelihood
for himself and family.

"6. That plaintiff's injuries and the consequences there-
of, as hereinabove set forth, are and were due to the joint
and concurrent negligent, reckless, wilful and wanton con-
duct of the defendants and other servants and agents of the
said Southern Railway Company, acting in the scope of
their duties as such, in the following particulars, to wit:

"(a) In failing to provide a safe place for the plaintiff,

and others in like situation, to walk on in disembarking from said passenger train;

"(b) In allowing a banana peel, which is slippery and dangerous for pedestrians to walk or step on, to be placed on the floor and aisle of said passenger coach where the plaintiff and others had to walk in getting on and off of said passenger train;

"(c) In allowing said banana peel to remain on the floor and aisle of the passenger coach in which the plaintiff and others were riding and where passengers had to walk in getting on and off of said train;

"(d) In failing to keep a lookout for banana peels and other like substances in the aisle of the passenger coach in which the plaintiff and others were riding; they well knowing that banana peels in the aisle of the coach were dangerous to passengers and that the same were likely to be placed or dropped there as it was customary for passengers to eat bananas and other fruits on trains;

"(e) In failing to keep the aisle and passage ways in said passenger coach free of banana peels and other substances to cause passengers to fall and be injured;

"(f) In failing to use any care or caution whatsoever to keep the aisle and passage ways of said coach clean and free of obstructions and substances calculated to cause injury to passengers and failing to look out and care for the safety of the plaintiff and other passengers traveling on said passenger coach and train.

"7. That by reason of the aforesaid negligent, reckless, wilful and wanton acts and conduct of the defendants, and other servants and agents of the said Southern Railway Company, the plaintiff was injured in the manner set forth to his damage in the sum of Fifty Thousand ($50,000.00) Dollars."

The defendants filed the following answer in the case:

"1. That they admit that the plaintiff suffered injury at the time and place mentioned in the complaint, but they

deny that they have any knowledge or information sufficient to form a belief as to the cause or the extent of his injuries.

"2. That they deny the allegations of the fifth paragraph of the complaint, with this modification, that while they know that obstacles are sometimes placed or dropped in the aisle of the passenger coach by passengers, they did not know, and had no reason to suppose, that a banana peel was on the floor of the aisle at the time alleged in the complaint; and they say that, if a banana peel was on the floor, its presence there was not due to negligence of the defendants, or of any other agent of Southern Railway Company."

The defendants' motion for direction of a verdict, made at the close of the introduction of all of the testimony, was based upon the following grounds:

"1. There is no evidence that the defendant Railway Company, and its agents, were negligent, or that their negligence was the proximate cause of the plaintiff's injury.

"2. Assuming that the plaintiff slipped on a banana peel, there is no evidence that the defendants, or other agents of the Railway Company, put the banana peel on the floor of the passenger coach; or that they knew it was there and failed to remove it; or that they negligently failed to discover it and remove it.

"3. There is no evidence that would support a reasonable verdict against the defendants."

The following testimony of the plaintiff, given on direct examination is pertinent to the question involved:

"Q. Do you recall taking a trip to Columbia, on the 13th day of August, 1928? A. Yes, sir.

"Q. How did you travel to Columbia? A. On the train, I do not know the number of the train, but we left Batesburg around nine o'clock in the morning.

"Q. On the train leaving Batesburg in the morning going towards Columbia? A. Yes, sir.

"Q. Was that a train of the defendant, Southern Railway Company? A. Yes, sir.

"Q. That is the only railroad running from Columbia to Batesburg? A. Yes, sir.

"Q. What conductor was in charge of that train? A. Captain Atwell.

"Q. He is the other defendant in this case? A. Yes, sir.

"Q. Did you purchase a ticket? A. Yes, sir; I purchased a ticket.

"Q. Where? A. From the ticket agent at Batesburg.

"Q. For passage to what point? A. To Columbia and return.

"Q. Did you pay for it? A. I did.

"Q. When you got on the train what did you do with your ticket? A. The conductor, Captain Atwell, punched it and gave it back to me.

"Q. You presented it to him and he punched it and gave it back to you? A. Yes, sir.

"Q. You presented it on the train? A. Yes, sir.

"Q. Did you ride that train to Columbia? A. Yes, sir; I did.

"Q. Did you see or talk to anyone on the train? A. Yes, sir; there was several folks on the train that I knew.

"Q. Did you see Hon. Sam C. Blease, a member of the Railroad Commission of South Carolina? A. Yes, sir.

"Q. Did you talk to him?. A. Yes, sir; we sat together practically all of the time going over to Columbia.

"Q. Did you go with him anywhere on that train or change your seat to the smoker or anywhere? A. We went out to the smoker once and came back and sat down again.

"Q. Now when you got to Columbia, or the Union Station, that is where you got off of the train? A. Yes, sir.

"Q. When you arrived at the Union Station in Columbia what did you do? A. I got off after being helped out, the train stopped and I just sat there, until most everyone was out, and I got up and started out.

"Q. You sat there until most everyone had gotten out? A. Yes, sir.

"Q. And you got up and started out? A. Yes, sir.

"Q. Tell us why it was that you sat there until most of the people got out, in front of you? A. In April before this August, I was going to tell you about that I had an operation for rupture in a very tender place and I did not want to take any unnecessary chance and when the train stopped there as it is customary for people on the train to go on out, I sat down in the seat until they were practically all out.

"Q. You were simply taking care of yourself on account of a recent operation for hernia? A. Yes, sir; I did not want to get up as the train might give a sudden jerk or that I might be jerked or shook about.

"Q. When did you leave the hospital or when were you discharged from the hospital or about when, from that operation? A. It was some time in May.

"Q. Some time in May you were discharged from a hospital and you went to the hospital in the latter part of April? A. Yes, sir.

"Q. Was the wound healing or not? A. Yes, sir; it was getting along as well as it could.

"Q. As well as it could? A. Yes, sir; I was warned to take good care of it; that it would be some time, probably six months or a year before I was ever strong again.

"Q. And that accounts for your delay in moving out of the train? A. Yes, sir.

"Q. When you did move and started out, what happened to you? A. I hardly know. I know my feet went out from under me, as I was going down the aisle and I tried to catch myself, and I turned and fell and I struck myself on the arm of the seat like this (indicating) with my side.

"Q. How were you walking down the aisles between the seats? A. Yes, sir; going down the aisles between the seats.

"Q. Just explain how you were going. A. Just walking along holding to the back of the seats and catching them as I came to them.

"Q. Just putting your hands on the back of the seats as you would move from one to the other walking carefully out? A. Yes, sir.

"Q. The seats in the passenger coaches, what kind of arms have they? A. It is a arm something like this (indicating) but it runs out this way and crooks like this.

"Q. How about the end, it is sticking out? A. Yes, sir.

"Q. I guess most of these gentlemen have seen the arm of a seat in a passenger coach. It was just the usual train seat or arm seat made out of a piece of wood? A. Yes, sir.

"Q. You were walking out and supporting yourself on the backs of the seats and as you came out, what happened to you? A. My feet went from under me and I tried to catch and I fell.

"Q. Where did it throw you? A. It threw me and I fell, and I hit my side and fell on the floor of the coach.

"Q. When you fell your side hit? A. It hit the end of this arm.

"Q. On the arm of the seat? A. Yes, sir.

"Q. And you fell from there onto the floor? A. Yes, sir.

"Q. What kind of fall was it? A. It was an awful, terrible, painful thing.

"Q. With what force did you go down? A. I was just falling through space, and my feet went out from under me.

"Q. It was a case of your feet going out from under you? A. Yes, sir; and I had no support of any kind.

"Q. Did you discover what it was that caused you to fall? A. A banana peel.

"Q. After you had fallen you saw the banana peeling? A. Yes, sir.

"Q. Did any agent or servant of the railroad company do anything to the banana peeling? A. Yes, sir; Mr. Atwell saw it when he came to where I was and he gave it a kick under the seat out of the aisle.

"Q. He was the conductor on that train?

"Q. Where were you then? A. Lying on the floor in the aisle of the coach.

"Q. Were you able to get up? A. No, sir; I was lying on the floor stretched out and someone was holding my head up, and when they came back and went to pick me up and bring me out.

"Q. How did you get out of that coach? A. Mr. Blease and two or three other people and the porter, I think, and others I think helped me out.

"Q. Did they have to carry you out? A. Yes, sir; they carried me out, and put me on an express truck on the outside.

"Q. And they phoned for an ambulance and it carried you to the hospital? A. Yes, sir.

"Q. Did anyone go to the hospital with you? A. Yes, sir; Mr. Sam Blease.

"Q. He rode in the ambulance with you, out to the hospital? A. Yes, sir.

"Q. Was that or not painful, and if so, tell us in your own way how it was? A. I fell and remained on this floor and I was dizzy and I never had anything to hurt me so bad, I do not know whether anyone ever had had a place like that on you, but when these places are new and if you happen to cough it feels like you are being torn apart, and I felt like it was being torn apart, like you had hold of it and trying to pull it in two.

"Q. That is the place where you had been operated on and which was healing up? A. Yes, sir.

"Q. You say they sent you to the hospital? A. Yes, sir.

"Q. How long did you stay in the hospital? A. Twelve or thirteen days, and I went there on Monday and it was Wednesday week, or Thursday a week when I came away."

The testimony of the plaintiff, given on cross-examination in response to questions by defendants' counsel, is in harmony with that quoted above, given on direct examination, and no conflict is apparent. Mr. Sam C. Blease, a mem-

ber of the South Carolina Railroad Commission, a witness for the plaintiff corroborated the plaintiff as to the matters which occurred in Mr. Blease's presence, and testified to the following facts, which we deem pertinent to the issue presented:

"A. I got out of the seat just before I got to Columbia, and carried out some grips and I went across the aisle to get some grips.

"Q. What was the next thing you knew about Mr. Hall? A. I was in the waiting room upstairs, and the negro porter came hunting Dr. Cain and said that Mr. Hall was hurt and I went to see if I could be of any service to him.

"Q. Where did you find him? A. In the aisle of the coach.

"Q. Lying in the aisle? A. Yes, sir.

"Q. How was he taken out? A. We took him out through a window, and laid him on a truck on the outside.

"Q. Was he carried in an ambulance to the hospital? A. Yes, sir.

"Q. Did you go with him? A. Yes, sir.

"Q. What was Mr. Hall's condition when you went back and saw him? A. He seemed to be suffering internally, apparently his side, he wanted his right leg helped up.

"Q. While you were holding his leg up or at any other time did you notice anything on the heel of his shoe? A. My attention was called by someone to something on the heel of his shoe, apparently a banana peel, the slime off of a banana.

"Q. It is a usual thing for people on the train to eat fruit? A. Yes, sir; a lot of people do.

"Q. State whether or not a banana peel is a dangerous thing to slip on? A. It certainly is.

"Q. Mr. Hall did not leave his seat at the time you did? A. No, sir; I left him sitting in the seat."

## CROSS-EXAMINATION

By Mr. Cromer:

"Q. I believe both the plaintiff and the defendant asked you to come here and be a witness in this case? A. Yes, sir.

"Q. I want to get a little more clearly where you were sitting before you went to the smoker? A. We were on the same seat, I was sitting on the inside and he came in and sat down by me. Mr. Hall sat next to the aisle, and when we came back from the smoker he went in first.

"Q. You got out and went to the smoker and when you came back he went in first? A. Yes, sir.

"Q. And as you went to Columbia, you were sitting outside and you got up and went outside and never saw him until someone told you he was hurt and they were looking for Dr. Cain? A. Yes, sir.

"Q. When you and Mr. Hall came back and went into that seat did you see that banana peel? A. No, sir.

"Q. When you got up to go out with the other people did you see the banana peel? A. No, sir.

"Q. You never saw anything but that smear of banana that seemed to be on his shoe? A. Yes, sir.

Mr. Timmerman:

"Q. Did you show that to any of the railroad men? A. Yes, sir; Mr. Caughman, one of the crew, saw it and looked at it with me. I believe he called my attention to it. I think I had his leg on my shoulder. We were at the truck, and he put his finger on it, and we looked at it.

"Q. You were not the only one that saw it? A. No, sir.

We also quote from the transcript the testimony of Frank Goff, as being material in the case as follows:

"Q. What relation are you to Mr. Melvin J. Hall? A. Brother-in-law.

"Q. Did he marry your sister or did you marry his sister? A. I married his sister.

"Q. Were you living in Columbia on August of last year? A. Yes, sir.

"Q. At the time when he received this injury? A. Yes. sir.

"Q. Did you learn of it shortly afterwards? A. Yes, sir; right away.

"Q. How? A. Someone called me about it.

"Q. As soon as you heard of it where did you go? A. I went straight to the Columbia hospital.

"Q. Did you find him there when you got there? A. Yes, sir.

"Q. Just tell the jury what condition you found him in when you got there? A. He apparently was in bad shape, he appeared to be a man that was hurt bad enough that he might die, from the appearance of him.

"Q. From the way he looked he looked bad? A. He looked to be in bad shape.

"Q. Did anyone show you or did you see anything on his shoes? A. Yes, sir; I saw the slime of a banana peeling on the heel of his shoe.

"Q. Is there any doubt in your mind about that being the slime from a banana peeling? A. It looked very much like it. If it was anything else my eyes fooled me.

"Q. State whether or not it looked to be fresh? A. Yes, sir; it looked to be fresh, it was juicy looking."

Attention is also called to the following provisions in the railway rule book, introduced in evidence by the plaintiff:

"1138—They must require members of their crew to be familiar with their duties, and must instruct them if necessary in the proper performance of their work and caution them as to its risks.

"1180—They must see that their trains are properly made up, inspected, cleaned, heated, etc.

"1191—They must contribute to the comfort of passengers and give attention to those who are ill, infirm, inexperienced or otherwise unable to care for themselves.

"1198—The aisle in care must be kept clear of baggage or other articles.

"1211—The duties of a passenger conductor are of a delicate and responsible character, demanding good judgment, good tact and courtesy. The safety of the train and the passengers are in his keeping and the relations between the railway and its patrons are to a great extent dependent on vigilance, care and discretion.

"1407—They must give courteous attention to the comfort, convenience, and safety to passengers, especially to those unattended or who are ill, infirm, inexperienced or otherwise unable to take care of themselves."

The testimony introduced on the part of the defendants is to the effect that the coach on which the plaintiff was riding was carefully inspected before it left Augusta and immediately after the alleged injury to the plaintiff; that no banana peel or anything else was found in the coach which could have caused the plaintiff to fall and receive the alleged injury. The witnesses for the defendants, or several of them, employees of the defendant Southern Railway Company, admitted that they knew a banana peel was dangerous and would cause a person to fall and become injured, and, further, in effect admitted that it was their duty to keep the place where the passengers had to walk clear of such things. It was their contention that no such thing was there. There was also testimony tending to show that the railroad authorities knew that it was customary for passengers to eat bananas and throw the peels on the floor, where the passengers had to walk, practically every day, especially so on excursion trains, such as the train in question was.

As we understand the position of appellants, it is their contention that while, under section 4943 of the Code of Laws, it is the duty of the railroad company to furnish reasonable accomodations for the convenience and safety of passengers, and though required to inspect its trains for the safety of its passengers, the law does not require continuous inspection, and the railroad is not chargeable with knowledge at each moment of

the condition of every part of its train, and therefore, under the evidence of this case, the defendants are not liable. In support of this position, counsel for appellants call attention to the case of *Louisville, etc., R. Co. v. O'Brien,* 163 K. Y., 538; 174 S. W., 31; Ann. Cas., 1916-E, page 1084. It is also appellants' contention that it does not apear from the evidence in the case that the alleged injury to the plaintiff was the result of any agency or instrumentality of the carrier in question such as under the decisions would give rise to a presumption of negligence, and cite in support of this position the case of *Anderson v. Railway Company,* 77 S. C., 434; 58 S. E., 149; 122 Am. St. Rep., 591, and *Taylor v. Railway,* 78 S. C., 552; 59 S. E., 641. In further support of their position, counsel for appellants also call attention to the following additional authorities: 4 R. C. L., 1208, § 630; *Hotenbrink v. Boston Elevated R. Co.,* 211 Mass., 77; 97 N. E., 624; 39 L. R. A. (N. S.), 419, and note; 10 A. L. R., 265, note; and note in 21 Ann. Cass., page 1144; *Goddard v. Boston, etc., R. Co.,* 179 Mass., 52; 60 N. E., 486; *Hauk v. New York, etc., R. Co.,* 34 App. Div., 434; 54 N. Y. S., 248; *Benson v. Manhattan R. Co.,* 31 Misc. Rep., 723; 65 N. Y. S., 271. Since under the well-organized rule *(Hutchison v. Southern Railway Company,* 109 S. C., 94, 95 S. E., 181, *Ashe v. Southern Railway Company,* 104 S. C., 414, 89 S. E., 482) it is the duty of the Court, in considering whether a motion for a direction of a verdict should be granted, to consider the evidence in the light most favorable to the plaintiff, for the purpose of this appeal it must be conceded that the plaintiff was injured while a passenger on the train in question by slipping on a banana peel in the said aisle of said train while attempting to disembark therefrom; also, there being some testimony to support the contention that the defendants knew it was customary for passengers on its train to eat bananas thereon, and to throw the peel of the bananas on the floor of the passenger coach, where the passengers walked in disembark-

ing from said train, and knew that it was dangerous, and that a passenger stepping on the peel of a banana would likely fall and be injured, a question for the jury was raised, as to whether the defendants, under the facts and circumstances of this case, exercised that degree of care for the safety and protection of the passengers on said train that the law and also the rules of the said railway company require, or were guilty of negligence, and, if so, whether such negligence was the proximate cause of the plaintiff's alleged injury. In the case of *Anderson v. Railway Company*, supra, cited by appellant, which was a case where the passenger was injured by a fellow passenger from a pistol shot wound, the Court held that it was the duty of the carrier to use due care to protect its passengers, and, in effect, further held that, where a carrier had knowledge of the existence of the danger or of the facts and circumstances from which the danger may be reasonably anticipated, it is the duty of the carrier to use the highest degree of care to protect a passenger from the wrongful acts of a fellow passenger. In the other South Carolina case, cited by appellant, *Taylor v. Railway*, supra, the alleged injury complained of was caused by a loud boisterous crowd of negroes on the station premises of the carrier where the plaintiff disembarked from the carrier's passenger train. The Court in that case approved the holding in the Anderson Case, supra. Another principle of law which the Court recognizes is that, when an injury occurs to a passenger on a train from any instrumentality or agency under the control of the carrier, a presumption of negligence arises on the part of the carrier, for in such instance the carrier owes to the pasenger the highest degree of care to protect him against danger and injury. Applying these principles of law to the evidence in the case, in our opinion, an issue of fact was raised for the jury. A reasonable inference to be drawn from the testimony in the case at bar is that a banana peel in the aisle of a passenger coach is not an unexpected peril, but is an expected peril and danger, especially on an excursion train, such as the train

in question in this case, and therefore it was for the jury to say, under the facts and circumstances in this case, whether the defendants were negligent and whether such negligence was the proximate cause of the plaintiff's alleged injury. In our opinion, the trial Judge properly refused defendant's motion for direction of a verdict. In this connection attention is called to the cases of *McKittrick v. Traction Company,* 88 S. C., 97, 70 S. E., 414, *Brown v. Railroad Company,* 83 S. C., 55, 64 S. E., 1012, and *Sullivan v. Railway Company,* 85 S. C., 535, 67 S. E., 905.

The exceptions are therefore overruled and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

MR. JUSTICE COTHRAN (dissenting): The rule of law, as I understand it, is that, when a passenger is injured by some instrumentality under the control of the carrier, he is entitled to recover damages upon the presumption of negli-course, of contributory negligence, but that, where the injury has not been the result of a defect in such instrumentality, the negligence of the carrier must be established by proof.

The evidence that the plaintiff slipped on a banana peel, or that there was a banana peel in the aisle of the coach, is by no means conclusive. The Court will take judicial notice of the fact that bananas constitute a part of the stock of news-butchers, as they are commonly called, for sale to passengers on the train and not to train employees; a banana peel upon the floor of a car could hardly be considered an instrumentality of the carrier. The plaintiff testified that he saw the banana peel in the aisle, and its presence there, for the purposes of the motion for a nonsuit and for a directed verdict of evidence, however, that it had been placed there by an agent of the company, or that they knew of its presence and failed to remove it, or that they negligently failed to discover it and remove it.

In *Livingston v. Atlantic Coast Line R. Co.* (C. C. A.) 28 F. (2d), 563, the Court decided that a passenger slipping

on a banana peeling on the floor of a railroad car, is held, as matter of law, not entitled to recover without showing that the railroad's employees had opportunity to notice the presence of the peeling and remove it.

A carrier is not liable for injuries to a passenger slipping on a banana peel on a car step while alighting, unless the trainmen knew of its presence on the step, or it had been there such a length of time before the accident as would impute notice to them. *Louisville, etc., R. Co. v. O'Brien,* 163 Ky., 538, 174 S. W., 31, Ann. Cass., 1916E, p. 1084, 4 R. C. L., 1208, § 630.

A carrier is not liable for injury to a passenger who falls from the steps of a car slippery because of tobacco juice thereon, if there is nothing to show that it had been there any length of time, and the conductor is not shown to have been negligent in failing to discover it before the accident happened, and the same rule has been applied to injury caused to a passenger slipping on a banana peel lying on the step of a car. *Hotenbrink v. Boston Elevated R. Co.,* 211 Mass., 77, 97 N. E., 624, 39 L. R. A. (N. S.), 419, and note; 10 A. L. R., 265, note; *Anjou v. Boston Elevated R. Co.,* 208 Mass., 273, 94 N. E., 386, 21 Ann. Cass., p. 1144, and note.

Since it is the duty of a carrier to keep its stations in a reasonably safe condition, its negligence in permitting a banana peel or the like to remain on the floor of a station may, as announced in the reported case, render it liable for personal injuries to one who received a fall from slipping on the peel. But, where the banana peel is dropped by some third person, and the carrier has not been negligent with respect to removing it, the carrier is not liable. Thus in *Goddard v. Boston, etc., R. Co.,* 179 Mass., 52, 60 N. E., 486, referred to in the reported case, there was an absence of any evidence showing how long the banana skin had lain where the plaintiff stepped on it, or how it got there. The plaintiff testified that there were employees of the defendant

near the spot when he fell; that he had just got off a smoking car at the rear of the train; that other passengers from the same train were walking along the platform; that there were people ahead of him; and that he stepped on something which he found out afterwards was a banana skin. He saw it after he fell, and another man kicked it off the platform against the wheel of a car, saying, "That is what he fell on." A witness testified that the platform was of some artificial stone and very smooth. It was held that the carrier was not liable; the Court saying: "The banana skin upon which the plaintiff stepped and which caused him to slip may have been dropped within a minute by one of the persons who was leaving the train. It is unnecessary to go further to decide the case."

In *Benson v. Manhattan R. Co.*, 31 Misc. Rep., 723, 65 N. Y. S., 271, the Court said: "Plaintiff sued to recover damages for personal injury sustained in consequence of slipping upon a banana peel lying upon the stairway of defendant's station. The accident occurred in midday, and the case is without a scintilla of evidence as to how long the banana peel was upon the stairway previous to the occurrence. To hold the defendant liable, under such proof, is to make the defendant an insurer of the safety of its passengers. This is not the law. It does not appear that the defendant had notice of the existence of this obstruction upon the stairway, nor that it had time or opportunity to remove it. For all that appears to the contrary, it might have been thrown there by some other passenger immediately previous to the plaintiff stepping upon it. The accident itself raises no presumption unfavorable to the defendant. No negligence on defendant's part having been shown, it was error to deny the defendant's motion to dismiss the complaint, and the judgment should be reversed."

In *Aughtry v. City of Columbia*, 111 S. C., 420, 98 S. E., 195, 196, the plaintiff was walking up Main street in the City of Columbia on a paved sidewalk; she stepped on a

piece of banana peeling lying on the sidewalk, slipped, fell, and broke her arm; she brought suit against the city for damages. In declaring that the trial Judge should have directed a verdict in favor of the defendant, the Court said: "There is no evidence to show that the peeling was on the sidewalk when the policeman passed. All the case shows is that the peeling was there when the plaintiff stepped on it. There is nothing in the case to show that the city had put it there or could have prevented it by the utmost care."

In *Pearson v. Payne, Director General of Railroads*, 245 Mass., 158, 139 N. E., 488, it was held, quoting syllabus: "Carrier was not liable for injuries caused by wet floor in waiting room, where condition had not existed for sufficient time to have been discovered."

In *Rhodes v. Houston, E. & W. T. R. Co.*, (Tex. Civ. App.) 242 S. W., 263, it was held, quoting syllabus: "The presence of a slippery substance on the platform of a car, used by passenger in getting on and off the train, does not constitute negligence on the part of the company, unless it was placed there by its employees or has been there long enough to justify the inference that a failure to discover it was due to a want of proper care."

In *Tevis v. United Rys. Co. of St. Louis* (Mo. App.) 185 S. W., 738, it was held, quoting syllabus: "Evidence in a passenger's action for injury held not to show how long the banana peel on which she slipped had been in the car, or whether defendant's employees had had a reasonable opportunity in which to discover and remove it."

In *Louisville & N. R. Co. v. O'Brien*, 163 Ky., 538, 174 S. W., 31, Ann. Cas., 1916E, 1084, it was held, quoting syllabus: "A carrier is not liable for injuries to a passenger slipping on a banana peel on a car step while alighting, unless the trainmen knew of its presence on the step, or it had been there such a length of time before the accident as would impute notice to them."

In *Davis v. R. Co.*, 292 Ill., 378, 127 N. E., 66, 10 A. L. R., 254, it was held, quoting syllabus: "The mere fact that

a passenger slips on a banana skin on a stairway leading from a carrier's station does not render the carrier liable for the resulting injury, if there is nothing to show notice on its part, either actual or implied, that the skin was there."

In *Bradford v. Woolworth Co.*, 141 S. C., 453, 140 S. E., 105, it was held, quoting syllabus: "Merchant is not liable for injuries to customers from defects in premises, in absence of knowledge of defect."

In *Akin v. Ry. Co.* (C. C. A. Minn.), 21 F. (2d), 1000, it was held, quoting syllabus: "Railroad held, as matter of law, not liable for passengers' injury, due to ice and wire on platform of coach, where no lack of care was shown."

In *Jones v. Ry. Co.*, 222 Mo. App., 1220, 5 S. W. (2d), 101, it was held, quoting syllabus: "Railroad is not liable for injuries caused by peelings on car floor, unless employees had knowledge or peelings were there for period imputing knowledge."

In *Pittsburg, C., C. & St. L. Ry. Co. v. Rose*, 40 Ind. App., 240, 79 N. E., 1094, 1098, a case where a passenger was injured by slipping on a banana peeling, there is an exhaustive discussion of this question, and the rule is laid down that "in all cases where an injury is sustained by a passenger while in transit, or through any defect in the appliances or operative mechanism of the means of transportation, or to any action of its servants, the carrier is held to the strictest account, but if the injury results through the carelessness of a third person in no way connected with the carrier, * * * for whose act the carrier can only be bound after notice, * * * a very different measure of duty prevails."

The last-named case is quoted with approval in the case of *Livingston v. R. Co.*, 28 F. (2d), 563, which contains an exhaustive review of the authorities by Judge Northcott of the Circuit Court of Appeals, concurred in by Circuit Judges Parker and Soper, decided October 16, 1928.

The case of *Forbes v. Pullman Co.*, 137 S. C., 433, 135 S. E., 563, was decided upon the ground that the plaintiff

was invited to enter a dimly lighted sleeping car, in the night time, and that it was the duty of the company, knowing the habit of passengers to obstruct the aisles with suitcases, to see that she safely reached a seat.

.In refusing the motion for nonsuit as to actual damages, the trial Judge said: "I do not think there is any evidence at all of any wilfulness or wantonness or recklessness, or to prove or show how long that banana peel had been there or that it could have been discovered by them." In other words he did not see a particle of evidence of negligence on the part of the defendants. The plaintiff testified that he did not leave his seat until all the other passengers were out of the car. The irresistible conclusion from the evidence is that one of the other passengers in leaving the car dropped the banana peel in the coach or kicked it into the aisle.

I think, therefore, that the motion for a directed verdict in favor of the defendants should have been granted, or at least that the motion for a nonsuit should have prevailed.